## LUCKING v. WELBILT CORPORATION.

1. EQUITY—REMEDY—NONRESIDENTS—SERVICE OF PROCESS—APPEARANCE.

   A State court is powerless to render a personal decree against a nonresident who had not been served with process within this State and who did not make a voluntary general appearance.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 14 Am Jur, Courts § 188.
[3] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 63 *et seq.*
[4] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 66.
[5] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 72.

2. SAME—OVERREACHING—ACCOUNTING—REFORMATION OF INSTRU-
MENTS—SERVICE OF PROCESS—APPEARANCE.

A State court may not determine that nonresident defendants
who have not been served with process within the jurisdiction
and who have not voluntarily appeared have been guilty of
overreaching, may not require them to render an accounting,
or reform a contract to which they were a party.

3. SAME—PARTIES—RELIEF.

A motion to dismiss bill of complaint as to defendant investment
counselor was properly granted, where no relief was sought
against him in suit by stockholder of former corporation
against such defendant, the successor corporation and others.

4. SAME—NECESSARY PARTIES—RELIEF.

Dismissal of suit for reformation of merger contract as to
successor corporation was proper, where no jurisdiction had
been obtained over a nonresident predecessor corporation which
was merged with a former Michigan corporation of which
plaintiff had been a stockholder and which corporation was
likewise not a party, since the necessary parties to effect the
relief sought were not before the court.

5. SAME—STOCKHOLDER'S DERIVATIVE SUIT—FRAUD—PLEADING.

Action of trial court in dismissing bill of complaint by former
stockholder of Michigan corporation which had been merged
with a New York corporation into defendant successor cor-
poration was proper, where bill failed to allege fraud en-
titling the plaintiff to maintain a shareholder's derivative suit
on behalf of the corporation.

Appeal from Washtenaw; Breakey, Jr. (James
R.), J. Submitted June 10, 1958. (Docket Nos.
10, 11, Calendar Nos. 47,497, 47,498.) Decided July
15, 1958.

Bill by William Alfred Lucking against Welbilt
Corporation, a Michigan corporation, Alexander P.
Hirsch, Henry Hirsch, Joseph Freedman, and others
for accounting and for modification and reforma-
tion of corporation merger contract. Order en-
tered quashing substituted service on nonresident de-
fendants. As to resident defendants, bill dismissed

on motion.   Plaintiff appeals both orders.   Appeals consolidated.   Affirmed.

*William Alfred Lucking, in propria persona.*

*Bodman, Longley, Bogle, Armstrong & Dahling (Henry C. Bogle* and *Louis E. Burke,* of counsel), for defendants.

Kavanagh, J.   Detroit-Michigan Stove Company, a Michigan corporation, finding itself in financial difficulties, which had resulted in extremely heavy losses for the years 1953 and 1954, and finding themselves in default on the payments due their bank, on a loan obtained to enable them to remain in business, and faced with the threat of foreclosure of the bank loan and the prospect of being forced into bankruptcy, employed defendant Joseph Freedman, an investment counselor for the Cleveland and Barbour families (majority stockholders of the corporation) to assist them in finding a way out of their financial difficulties.

Defendant Freedman negotiated a merger with Welbilt Stove Company, a New York corporation, which was a successfully operated and financially strong corporation, and which had just completed several years in which the corporation had made large profits.   The results of the negotiations carried on by defendant Freedman culminated in a merger agreement dated February 23, 1955, and executed by the officers of both corporations on that date following authorization of the board of directors. The merger contract was subsequently approved by the shareholders of the respective corporations, and, particularly, by the Detroit-Michigan Stove Company shareholders on the 19th day of May, 1955.

Pursuant to the merger contract, the shareholders of the respective merging corporations exchanged

their shares for shares of common and preferred stock in the successor Welbilt Corporation, a Michigan corporation.

It would appear that the successor corporation operated with considerable success in view of the fact that dividends were paid beginning early in 1956.

Plaintiff, on April 17, 1956, filed his bill of complaint against the defendants Alexander P. Hirsch, Henry Hirsch, Arthur Richenthal, Welbilt Corporation, a Michigan corporation, and Joseph Freedman. On the same day plaintiff caused to be entered an order of publication and summons to be issued directing nonresident defendants Alexander P. Hirsch, Henry Hirsch, and Arthur Richenthal, residents of the State of New York, to appear and answer.

On May 28, 1956, plaintiff filed an amendment to the bill of complaint, adding other nonresident members of the Hirsch families to the list of defendants, and caused a like order of publication to be entered and summons to be issued as to such defendants.

On June 27, 1956, a motion was filed by defendants Alexander P. Hirsch, Henry Hirsch, and Arthur Richenthal, all appearing specially, to vacate and quash the order of publication and summons dated April 17, 1956, and service thereof. On the same date (June 27th) a similar motion was filed by the additional nonresident defendants, all appearing specially, in respect to the order of publication and summons dated May 28, 1956.

Plaintiff filed further amendments to the bill of complaint, and on September 27, 1956, caused a new order of publication to be entered as to all the nonresident defendants.

On March 14, 1957, a motion was filed by all the nonresident defendants, all appearing specially, to

vacate and quash the order of publication dated September 27, 1956, and service thereof.

In the meantime, defendants Welbilt Corporation, a Michigan corporation, and Joseph Freedman, both residents of Wayne county, Michigan, having appeared generally, filed a motion on June 27, 1956, to dismiss the bill of complaint. Successive amendments by plaintiff to the bill of complaint on September 26, 1956, and March 14, 1957, and a complete amended bill of complaint filed July 23, 1957, made it necessary for defendants Welbilt Corporation and Joseph Freedman to file amendments to their motion on October 3, 1956, March 15 and July 29, 1957, respectively.

On July 31, 1957, the circuit judge signed an order (filed August 1, 1957) vacating and quashing the several orders of publication, summons and service thereof as to the nonresident defendants, and an order (also filed August 1, 1957) granting the motion of defendants Welbilt Corporation and Joseph Freedman to dismiss the amended bill of complaint.

Plaintiff filed separate claims of appeal from these orders.

Plaintiff's bill of complaint, as amended, alleges that he, a resident of Washtenaw county, sues individually as the representative of the class of former preferred and common stockholders of the Detroit-Michigan Stove Company, a Michigan corporation. He alleges that he has been a common stockholder of Detroit-Michigan Stove Company at different times in the past, and particularly by purchase of 300 shares of common stock in March, 1954, 400 shares in April, 1955, and 50 shares of preferred stock in October, 1955.

It is alleged that defendant Joseph Freedman is an investment consultant in Detroit and a resident of Wayne county; defendant Arthur Richenthal is an attorney in New York and a resident of that

State; and defendants Alexander P. Hirsch and Henry Hirsch, and all other defendants, with the exception of Welbilt Corporation, a Michigan corporation, whose home office is in Detroit, Michigan, are residents of the State of New York, and were, with their families, the sole owners of the entire capital stock of Welbilt Stove Company, a New York corporation, at the time of its merger with the Detroit-Michigan Stove Company.

Plaintiff, as representing the said class of stockholders, referred to above, filed his action for an accounting and other relief against the successor corporation, Welbilt Corporation, a Michigan corporation, and said defendants Alexander P. Hirsch and Henry Hirsch, alleging that the merger carried out under the agreement of February 23, 1955, which plaintiff contends to be unfair, inequitable, unreasonable, and, in effect, a constructive fraud on the former preferred and common stockholders of Detroit-Michigan Stove Company, who have, as plaintiff believes, for the most part, exchanged their said shares for shares in the successor Welbilt Corporation, in ignorance of their rights and best interests.

Plaintiff in his bill of complaint further alleges that the holders of the outstanding $1,014,920 par value of preferred stock of Detroit-Michigan Stove Company received under said merger contract preferred stock of the successor corporation of a total par value of $761,190; and that the holders of the outstanding $948,007 par value of common stock of said Detroit-Michigan Stove Company received under said merger contract common stock of the successor corporation of the same total par value of $948,007; that outstanding preferred and common stock of Detroit-Michigan Stove Company represented net tangible assets of that company having a book value as of December 31, 1954, of $3,964,693;

that for said $3,964,693 net assets (which, upon information, plaintiff shows had a fair value of upwards of $5,000,000), and for 2 other alleged intangible asset values consisting of the New York stock exchange listing of the Detroit-Michigan Stove Company common shares and certain corporate federal profits tax benefits or carry-overs (resulting from heavy operating losses of Detroit-Michigan Stove Company in 1953 and 1954), both of said items together being alleged to have an additional value of upwards of $2,000,000, plaintiff's class of Detroit-Michigan stockholders received a total alleged fair value of $4,079,190 (consisting of stock received from the successor corporation, being $761,190 par value of preferred shares therein and common stock having a total fair value on the basis of recent quotations on the New York exchange of $3,318,000).

Also, that the holders of the $142,500 par value of preferred stock of Welbilt Stove Company (of New York) received under said merger contract preferred stock of the successor corporation of the total par value of $2,000,000; and that the holders of the outstanding $150,000 par value of common stock of the said Welbilt Stove Company received under said merger contract common stock of the successor corporation of the par value of $3,250,000; that said outstanding preferred and common stock of Welbilt Stove Company represented net tangible assets of that company having a book value as of December 31, 1954, of $5,776,033 (according to the balance sheet attached as an exhibit to the merger contract of February 23, 1955); that for said $5,776,033 net assets, the defendants Hirsch received a total alleged fair value of $13,375,000 (consisting of stock received from the successor corporation, being $2,000,000 par value of preferred stock, and common stock having a total fair value

on the basis of recent quotations on the New York stock exchange of $11,375,000).

Plaintiff further alleges that, upon information, the merger was so maneuvered that the Michigan shareholders received less than 3/5 of their asset values paid in, and the New York stockholders received over 2-1/2 times their asset values turned in; that, upon information, said valuable rights and interests of plaintiff's class of stockholders of Detroit-Michigan Stove Company were concealed from them at all times by the defendants who acted together, with other agents unknown by plaintiff, in said concealment, and by various devices, means, assertions, and suggestions in the months of December, 1954, and January and February, 1955, that there was a time limit in February, 1955, when, by pressure of company debts and other difficulties and dangers, this hurried-up merger must be accepted, or Detroit-Michigan Stove Company would be ruined and its stockholders would lose everything; that by these circumstances and others which will be brought out on final hearing, especially the sudden knowledge of "great danger in 1954," the Detroit-Michigan Stove Company stockholders became so bewildered and frightened and confused that they never knew what the merger contract of February 23, 1955, meant, and were persuaded thereby and by other influences to follow blindly the advice of defendant Joseph Freedman.

Nowhere in the bill of complaint or amended bills of complaint does the plaintiff allege any facts upon which any court could infer that the class of shareholders which he purports to represent were in any way fraudulently induced to enter into the merger agreement. The best that can be said for the pleadings of plaintiff is that he asserts a number of conclusions and beliefs without stating any facts upon which these conclusions and beliefs are founded.

Plaintiff contends that the lower court erred in granting the motion of the nonresident defendants against whom he had prayed that the court determine the fair value of and advantage to defendants, and compel the payment thereof to defendant Welbilt Corporation and/or the interests of plaintiff's class of Detroit-Michigan Stove Company stockholders, as constituted prior to said merger, the tangible assets consisting of property shown on the balance sheet, the value of the New York stock exchange listing, as well as the federal income and excess profits tax carry-overs or advantages resulting from operating losses of the former Detroit-Michigan Stove Company in the years 1953 and 1954.

Plaintiff further contends that the court erred by holding that the action was *in personam* and not *in rem* and that jurisdiction could not be obtained over nonresidents by publication in a personal action; that the court erred in granting the motions of the Welbilt Corporation and defendant Freedman for the reason that no specific relief was asked against defendant Freedman, and since the plaintiff had not made the directors of the old merged Detroit-Michigan Stove Company parties defendant, and he was asking for a reformation of the merger agreement, his bill of complaint did not state a cause of action against the successor Welbilt Corporation.

In the case of *Dean* v. *Kellogg,* 294 Mich 200, this Court, speaking through Justice BUTZEL, said (pp 206, 207):

"The question of jurisdiction over necessary parties to the suit or of the subject of action is controlling. Defendant John L. Kellogg, a resident of Illinois, is asked to account for alleged wrongs to Warren-Teed and Seedtown; he has not been personally served within the State, nor has he submitted to the jurisdiction of this Court. We are powerless to render any personal decree against him; our

process, personal or constructive, is confined to the limits of this State so far as acquiring personal jurisdiction over nonresidents. *Outhwite* v. *Porter,* 13 Mich 533; *McEwan* v. *Zimmer,* 38 Mich 765 (31 Am Rep 332); *Booth* v. *Connecticut Mutual Life Ins. Co.,* 43 Mich 299; *Howard* v. *Coon,* 93 Mich 442; *Stewart* v. *Eaton,* 287 Mich 466, 477 (120 ALR 1354); *Pennoyer* v. *Neff,* 95 US 714 (24 L ed 565). The dismissal of the bill was correct as to him."

Justice Butzel went on to say (p 209):

"In the case before us, there is no *res* in control of the court, the case having been begun as though it were the usual equity action for an accounting. In a proceeding *in rem,* the court disposes of property owned by the parties or of some interest therein."

Justice Carr, writing in *Specialties Distributing Co.* v. *Whitehead,* 313 Mich 696, said as follows (pp 699, 700):

"Plaintiff's alleged cause of action rests on the claim that defendant Whitehead is indebted to plaintiff under the contract between the parties. No relief could be granted without a determination as to the fact of the indebtedness and the exact amount thereof. This characterizes the proceeding as one *in personam* rather than *in rem.*"

Justice Carr went on to say (p 700):

"The principles of law, recognized and applied in *Eisner* v. *Williams,* 298 Mich 215, are controlling. Plaintiffs there brought suit in equity to obtain cancellation of an agreement to pay attorney fees to defendant Williams, and to secure payment of such fees to plaintiffs rather than to defendant Williams. The latter was served with an order of appearance by registered mail but was not served with process within the State, nor did he enter a general appearance. He did, however, appear specially and move to dismiss, claiming in substance that the matters in issue

could not be litigated. without personal service on him within the jurisdiction, or voluntary general appearance on his part."

The situation in the case at bar is analogous to the cases above mentioned. The trial court could not properly determine that there had been an over-reaching on the part of the nonresident defendants, nor could he require an accounting or alter or change the terms of the contract without obtaining personal jurisdiction over the defendants, either by service of process within the jurisdiction or by voluntary appearance. Therefore, the court correctly granted the motion to dismiss as to the jurisdiction over the nonresident defendants.

As to the motion to dismiss of defendant Freedman and Welbilt Corporation, certainly, since no relief is prayed against Freedman, there can be no question about the granting of the motion as to him.

In the case of *Dean* v. *Kellogg, supra,* this Court affirmed an order granting a motion to dismiss by certain resident defendants, who had been served with process, on the ground that certain other necessary parties were nonresidents and the court had no jurisdiction over such necessary parties.

In the case at bar, plaintiff sought to have reformation of the merger contract. The Detroit-Michigan Stove Company, and its directors, at the time of the merger were not parties to this action. The Welbilt Stove Company, a New York corporation, is not a party to this action. Since it is impossible to obtain jurisdiction over the nonresident named defendants, and they cannot be reached by service of Michigan process, the relief prayed for in the bill of complaint could never be granted. And, since the court did not have jurisdiction over the necessary parties to grant the relief prayed for, it did not err in granting the motion to dismiss of Welbilt Corporation. *Dean* v.

*Kellogg, supra.* Detroit-Michigan Stove Company is not a party to this action.

There is no doubt of the power of a court of equity, in case of fraud, abuse of trust, or misappropriation of corporation funds, at the instance of a single stockholder, to grant relief and compel a restitution. *Miner* v. *Belle Isle Ice Co.,* 93 Mich 97 (17 LRA 412). Any recovery runs in favor of the corporation, for the shareholders do not sue in their own right. *Talbot* v. *Scripps,* 31 Mich 268; *Horning* v. *Louis Peters & Co.,* 202 Mich 140; *Curtiss* v. *Wilmarth,* 254 Mich 242. They derive only an incidental benefit. *Davenport* v. *Dows,* 85 US (18 Wall) 626 (21 L ed 938). If the defendants account, it must be to the corporation and not to the shareholders. As to the defendants charged with defrauding it, the corporation is an indispensable party. *Cicotte* v. *Anciaux,* 53 Mich 227; *Coxe* v. *Hart,* 53 Mich 557: *McMillan* v. *Miller,* 177 Mich 511.

The decree must protect the defendants against any further suit by the corporation, and this will not be true unless it properly be made a party to the action. The usual practice is to make the beneficiary corporation a party defendant, although in substance it is a party plaintiff. In the instant case, the accounting, if any, would be to the Detroit-Michigan Stove Company. Under the above authorities, the motion should have been granted.

It should be also called to attention that nowhere in the bill of complaint are there any acts which constitute fraud which could be relied upon under the theory of *Dean* v. *Kellogg, supra,* to permit a shareholder's derivative suit on behalf of the corporation.

The action of the lower court is affirmed. Costs in favor of defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.